SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Kirby Lenihan** (A-45-12) (071497)

**Argued November 4, 2013 -- Decided September 18, 2014**

**RODRÍGUEZ, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

The issue in this appeal is whether N.J.S.A. 39:3-76.2f, the Mandatory Seat Belt Usage Law, can be deemed "a law intended to protect the public health and safety," or a predicate offense within the meaning of N.J.S.A. 2C:40-18b.

On Friday, August 10, 2007, just after midnight, eighteen-year-old defendant Kirby Lenihan was driving her 1999 Hyundai Accent on Route 519 in Hampton Township. The speed limit on the road was forty-five miles per hour. K.G., who was sixteen years old, was in the passenger seat. It was raining heavily and visibility was poor. At approximately 12:39 a.m., defendant veered to the right, drove through the shoulder, collided head-on with the guardrail, and hit a yellow roadway sign about five feet off the side of the road. Defendant and K.G. suffered serious head injuries as a result of the crash. K.G. also sustained serious bodily injuries. Neither defendant nor K.G. were wearing seat belts, and both airbags deployed. Defendant admitted that she was "driving too fast" given the road and weather conditions and her inexperience as a driver. Two aerosol cans, a dust remover and a carpet deodorizer, which contain difluoroethane, were discovered in defendant's car during the police investigation of the accident. The carpet deodorizer was missing its cap and nozzle. Based on his "training and experience," an investigating officer concluded that "cans such as these and in such condition are used to get high. The process is known as 'huffing.'" Defendant and K.G. were transported to Morristown Memorial Hospital. As a result of the evidence of suspected inhalation, blood was drawn from defendant at the hospital about forty-five minutes after the accident, and difluoroethane was found in her blood. K.G. died the following morning at 5:26 a.m. as a result of her injuries.

A Sussex County Grand Jury returned an indictment charging defendant in count one with a violation of N.J.S.A. 2C:40-18a, a second-degree offense, based on the Seat Belt Law and recklessly causing the death of K.G. The indictment also charged defendant with second-degree vehicular homicide, N.J.S.A. 2C:11-5a (count two); and first-degree vehicular homicide within 1000 feet of school property, N.J.S.A. 2C:11-5b(3) (count three). The latter charge was subsequently dismissed on defendant's motion. Defendant also moved to dismiss count one on the grounds that the Seat Belt Law was not intended to "protect the public health and safety" within the meaning of N.J.S.A. 2C:40-18. That motion was denied by the trial court. As a result of plea negotiations, count one was amended to charge a third-degree crime, N.J.S.A. 2C:40-18b. The State agreed to recommend dismissal or merger of the vehicular homicide charge and to dismiss various summonses, including reckless driving, N.J.S.A. 39:4-96. Defendant retained the right to appeal the denial of her motion to dismiss count one. The judge imposed a three-year term of supervised probation conditioned upon serving 180 days in the Sussex County jail.

Defendant appealed. In a published opinion, the Appellate Division affirmed. State v. Lenihan, 427 N.J. Super. 499 (App. Div. 2012). The Appellate Division held that the Seat Belt Law is a "law intended to protect the public health and safety" as stated in N.J.S.A. 2C:40-18. Moreover, the panel held that the statutory language of N.J.S.A. 2C:40-18 is not unconstitutionally vague as applied. Id. at 511, 514-15. The Supreme Court granted defendant's petition for certification. 213 N.J. 386 (2013).

**HELD:** Under the circumstances presented in this case, a violation of the Seat Belt Law, clearly "intended to protect the public health and safety," is a predicate offense that can support a conviction under N.J.S.A. 2C:40-18b.

1

1. Defendant argues that N.J.S.A. 2C:40-18b does not apply to this case because the Legislature intended to limit the types of predicate offenses contemplated by the statute to offenses such as "violations of fire and building codes, pollution controls, or other laws whose violations risk harm to the community at large." Defendant argues that a violation of the Seat Belt Law, therefore, does not qualify as a predicate offense for N.J.S.A. 2C:40-18b. The Court finds nothing in N.J.S.A. 2C:40-18b that would limit the phrase, "law intended to protect the public health and safety," in the manner suggested by defendant. Without a clear indication from the Legislature that it intended the phrase to have a special limiting definition, the Court must presume that the language used carries its ordinary and well-understood meaning. State v. Bunch, 180 N.J. 534, 543 (2004). Even if the Court was to accept the distinction urged by defendant, however, the Seat Belt Law does protect the community at large and not merely discrete individuals. The Seat Belt Law's legislative history reinforces that notion and speaks to the law's broad scope. The Court thus finds that the language included in N.J.S.A. 2C:40-18 -- making it an offense "to knowingly violate[] a law intended to protect the public health and safety" -- encompasses the Seat Belt Law. (pp. 10-15)

2. Defendant also challenges the constitutionality of N.J.S.A. 2C:40-18b. She contends the law is vague as applied to her. A presumption of validity attaches to every statute. That presumption is "particularly daunting when a statute attempts to protect the public health, safety, or welfare." In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497 (1989), cert. denied, 493 U.S. 1045 (1990). In short, public health and safety legislation has been consistently sustained if it "'is not arbitrary, capricious, or unreasonable, and the means selected bear a rational relationship to the legislative objective.'" Ibid. (quoting Brown v. City of Newark, 113 N.J. 565, 572 (1989)). A statute "is void if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998) (citation and internal quotation marks omitted). Penal laws "are subjected to sharper scrutiny and given more exacting and critical assessment under the vagueness doctrine than civil enactments." State v. Cameron, 100 N.J. 586, 591 (1985). Nonetheless, "vagueness may be mitigated by a scienter requirement, especially when a court examines a challenge claiming that the law failed to provide adequate notice of the proscribed conduct." State v. Saunders, 302 N.J. Super. 509, 517 (App. Div.), certif. denied, 151 N.J. 470 (1997). (pp. 16-19)

3. The Court rejects the argument that N.J.S.A. 2C:40-18b is unconstitutionally vague. Defendant concedes that N.J.S.A. 2C:40-18 is not facially unconstitutional, but she argues that she was not given prior notice that a violation of the Seat Belt Law would subject her to prosecution under N.J.S.A. 2C:40-18. However, defendant admitted that her passenger, K.G., was not wearing her seat belt, in violation of the Seat Belt Law. Thus, defendant knowingly violated that statute. The Seat Belt Law is clearly a "law intended to protect the public health and safety" within the meaning of N.J.S.A. 2C:40-18. A person "of common intelligence" should understand that a knowing violation of the Seat Belt Law would fall within the statute's scope. Thus, defendant had reasonable notice that a knowing violation of the Seat Belt Law, causing serious bodily injuries, could subject her to prosecution under N.J.S.A. 2C:40-18b. A statute that attempts to protect the public health, safety, or welfare, is entitled to a significant presumption of validity. Defendant has not overcome that presumption or satisfied her burden of establishing that N.J.S.A. 2C:40-18 is unconstitutionally vague as applied. (pp. 19-21)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

KIRBY LENIHAN,

    Defendant-Appellant.


        Argued November 4, 2013 – Decided September 18, 2014

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 427 N.J. Super. 499 (2012).

        Gary A. Kraemer argued the cause for
        appellant (Daggett, Kraemer, Kovach &
        Gjelsvik, attorneys).

        Gregory R. Mueller, First Assistant
        Prosecutor, argued the cause for respondent
        (David J. Weaver, Sussex County Prosecutor,
        attorney).

        Kenneth A. Burden, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General, attorney).


    JUDGE RODRÍGUEZ (temporarily assigned) delivered the

opinion of the court.

    Pursuant to N.J.S.A. 2C:40-18b, it is a third-degree crime

when a person "knowingly violates a law intended to protect the

public health and safety or knowingly fails to perform a duty

1

imposed by a law intended to protect the public health and safety and recklessly causes serious bodily injury." The issue in this case is whether N.J.S.A. 39:3-76.2f, the Mandatory Seat Belt Usage Law, can be deemed "a law intended to protect the public health and safety," or a predicate offense within the meaning of N.J.S.A. 2C:40-18b. We hold that under the circumstances presented in this case, a Seat Belt Law violation is a predicate offense that can support a conviction under N.J.S.A. 2C:40-18b.

I.

On Friday, August 10, 2007, just after midnight, eighteen-year-old defendant Kirby Lenihan was driving her 1999 Hyundai Accent on Route 519 in Hampton Township. The speed limit on the road was forty-five miles per hour. K.G., who was sixteen years old, was in the passenger seat. It was raining heavily and visibility was poor.

At approximately 12:39 a.m., defendant veered to the right, drove through the shoulder, collided head-on with the guardrail, and hit a yellow roadway sign about five feet off the side of the road. Defendant and K.G. suffered serious head injuries as a result of the crash. K.G. also sustained serious bodily injuries. Neither defendant nor K.G. were wearing seat belts. Both airbags deployed. Defendant admitted that she was "driving

too fast" given the road and weather conditions and her inexperience as a driver.

Two aerosol cans, "Clean Safe Aerosol Dust Remover" and "Arm and Hammer Carpet Deodorizer," which contain difluoroethane, were discovered in defendant's car during the police investigation of the accident. The carpet deodorizer was missing its cap and nozzle. Based on his "training and experience," an investigating officer concluded that "cans such as these and in such condition are used to get high. The process is known as 'huffing.'"

Defendant and K.G. were transported to Morristown Memorial Hospital. As a result of the evidence of suspected inhalation, blood was drawn from defendant at the hospital about forty-five minutes after the accident, and difluoroethane was found in her blood. The following morning, K.G. died at 5:26 a.m., as a result of her injuries. Defendant asserted that due to the injuries suffered in the accident, she had no specific recollection of the accident or the events leading up to it.

II.

A Sussex County Grand Jury returned an indictment charging defendant in count one with a violation of N.J.S.A. 2C:40-18a, a second-degree offense, based on the Seat Belt Law and recklessly causing the death of K.G. The indictment also charged defendant with second-degree vehicular homicide, N.J.S.A. 2C:11-5a (count

3

two); and first-degree vehicular homicide within 1000 feet of school property, N.J.S.A. 2C:11-5b(3) (count three). The latter charge was subsequently dismissed on defendant's motion.

Defendant moved to dismiss the indictment in its entirety on the grounds of "bias and preconceived attitude by a grand juror," and "prejudicially improper instructions to the grand jury by the State." Defendant also moved to dismiss count one on the grounds that the Seat Belt Law was not intended to "protect the public health and safety" within the meaning of N.J.S.A. 2C:40-18. That motion was denied by the trial court.

As a result of plea negotiations, count one was amended to charge a third-degree crime. The State agreed to recommend dismissal or merger of the vehicular homicide charge and to dismiss various summonses for: failure to wear a seat belt and to ensure that K.G. buckled her seat belt, N.J.S.A. 39:3-76.2f(b); driving under the influence, N.J.S.A. 39:4-50(g); and reckless driving, N.J.S.A. 39:4-96. Defendant retained the right to appeal the denial of her motion to dismiss count one. The judge imposed a three-year term of supervised probation conditioned upon serving 180 days in the Sussex County jail.

Defendant moved for a stay of the custodial term pending appeal. The Appellate Division granted the application. In a published opinion, the Appellate Division affirmed. State v. Lenihan, 427 N.J. Super. 499 (App. Div. 2012). The Appellate

4

Division held that the Seat Belt Law is a "law intended to protect the public health and safety" as stated in N.J.S.A. 2C:40-18. Moreover, the panel held that the statutory language of N.J.S.A. 2C:40-18 is not unconstitutionally vague as applied. Id. at 511, 514-15.

We granted defendant's petition for certification. 213 N.J. 386 (2013).

III.

A.

Defendant challenges on two grounds the denial of her motion to dismiss count one. First, defendant argues that pursuant to principles and canons of statutory interpretation, N.J.S.A. 2C:40-18b does not apply to her case. Defendant contends that her "minor traffic" violation of the Seat Belt Law -- failing to ensure that her passenger, K.G., had buckled her seat belt while riding in the vehicle -- cannot serve as a predicate offense to support a conviction pursuant to N.J.S.A. 2C:40-18b. She argues that someone who violates the Seat Belt Law "does not threaten 'the public health and safety' of people at large, but rather the health and safety of" a discrete individual -- the unbuckled passenger riding in the driver's car. Defendant argues to the contrary that, according to the legislative history of N.J.S.A. 2C:40-18, the type of offenses that should serve as predicate offenses pursuant to the statute

5

are "violations of fire and building codes, pollution controls, or other laws whose violation risks harm to the community at large."

Second, defendant argues that N.J.S.A. 2C:40-18b as applied here is void because it is unconstitutionally vague. Defendant contends that the phrase "law intended to protect the public health and safety" as stated in N.J.S.A. 2C:40-18, is facially vague, ambiguous, and overbroad. Moreover, defendant argues that the statute is unconstitutionally vague as applied.

Defendant contends that, as a violator of a mere traffic offense, she was not given prior notice that a violation of the Seat Belt Law would subject her to prosecution of a third-degree crime pursuant to N.J.S.A. 2C:40-18. Defendant's argument is that the Legislature made a violation of the Seat Belt Law "a ticketable offense" under Title 39. Therefore, "the general public is entitled to fair notice of such serious consequences." (citing State v. Lisa, 391 N.J. Super. 556, 579-80 (App. Div. 2007), aff'd, 194 N.J. 409 (2008)). Thus, defendant argues that her due process rights were violated as well.

Defendant further argues that the ambiguity of N.J.S.A. 2C:40-18 "places in the prosecutor's arsenal an unconstitutional ability to overreach into the legislative domain and raise virtually any" regulatory or local ordinance violation "to the serious level of an indictable crime." As an example, defendant

directs the Court's attention to a municipality's "leash law" requiring dog owners to restrain their pets. Defendant notes that such a law clearly protects public health and safety. Defendant suggests, therefore, that "an owner of a dog which runs across the street and bites the mailman could be criminally prosecuted" under N.J.S.A. 2C:40-18.

Defendant contends that the Appellate Division "ignored the strictures against overly broad, undefinable criminal law" as discussed in State v. Riley, 412 N.J. Super. 162 (Law Div. 2009). Thus, defendant argues, "[r]easonable limits must be established for the phrase 'law intended to protect the public health and safety' . . . in order to save the validity of an otherwise unconstitutionally vague and overbroad statute."

B.

The State argues that the Seat Belt Law "is directed at every driver and passenger in a motor vehicle in the State of New Jersey," and thus, the "law is directed to the public as a whole." The State notes that "[h]ad the Legislature intended to limit the statute's reach to those offenders risking widespread injury or damage, they could have easily made that statement." For example, as the State explains, N.J.S.A. 2C:17-2 specifically prohibits "widespread injury or damage."

The State relies on Waterson v. General Motors Corp., 111 N.J. 238, 268 (1998), for the proposition that the Seat Belt Law

7

is clearly "intended to protect the public health and safety." In Waterson, this Court explained that seat belts "may be the most significant source of automobile crash protection for automobile occupants." Id. at 269-70.

The State also argues that "the legislative history appears to support the conclusion that the Legislature did not intend [a] narrow interpretation" of N.J.S.A. 2C:40-18. Citing N.J.S.A. 2C:2-1, which was amended in the same bill that created N.J.S.A. 2C:40-18, the State notes that the amendment contained similar language imposing liability on those who violate "any other law intended to protect the public safety."

Furthermore, the State argues that N.J.S.A. 2C:40-18 does not merely require a seat belt violation, "but also the infliction of serious bodily injury or death" as a result of a defendant's reckless conduct. The State submits that under the circumstances of this case -- defendant's inexperience as a driver, the bad road and weather conditions, and the evidence of "huffing" -- her conduct was indeed reckless and "prosecution under N.J.S.A. 2C:40-18 was not trivial."

Finally, the State argues that N.J.S.A. 2C:40-18, specifically the phrase "a law intended to protect the public health and safety," is not unconstitutionally vague. The State explains that a violation of the Seat Belt Law "falls squarely within the definition of" N.J.S.A. 2C:40-18.

8

Amicus curiae Attorney General of New Jersey (Attorney General) argues that the Seat Belt Law is a "law intended to protect the public health and safety" as understood by N.J.S.A. 2C:40-18. The Attorney General contends that the statute's language is not ambiguous. If the Legislature intended to restrict N.J.S.A. 2C:40-18 to only those public health and safety laws "affecting the 'general public at large,'" as defendant maintains, then the Legislature would have done so. Thus, the Attorney General submits, the Court should presume that the phrase at issue "carries its ordinary and well-understood meaning."

After surveying the development of the seat belt laws on the federal and state level, the Attorney General argues that "[i]t is beyond question that the purpose of the [Seat Belt Law] is to protect the public safety of all automobile passengers in New Jersey." Moreover, the Attorney General notes that this Court in Waterson, supra, took judicial notice of the effectiveness and usefulness of seat belts. 111 N.J. at 269.

The Attorney General also notes that at least ten of our sister states have explicitly interpreted seat belt laws as laws "enacted to serve the public safety and welfare."

The Attorney General argues that the Legislature enacted the Seat Belt Law to protect the general public, not merely a

discrete individual. The Attorney General notes that the Iowa and Illinois Supreme Courts have specifically resolved this issue consistent with the State's position. (citing State v. Hartog, 440 N.W. 2d 852, 858 (Iowa 1989); People v. Kohrig, 498 N.E. 2d 1158, 1164-65 (Ill. 1986) (holding that "unbelted drivers and passengers endanger the safety of others")). The Attorney General emphasizes that in Kohrig, supra, the Illinois Supreme Court explained that "an unrestrained occupant of a vehicle may injure others inside or out of the vehicle during an accident." 498 N.E. 2d at 1164.

The Attorney General contends that N.J.S.A. 2C:40-18 is not unconstitutionally vague as applied to defendant. The Attorney General argues that the phrase "knowingly violates a law intended to protect the public health and safety," in N.J.S.A. 2C:40-18, "fairly apprised defendant that she faced criminal liability for failing to ensure her minor passenger was wearing a seat belt in her car." The Attorney General further opines that defendant's unsupported assertions "that the floodgates will open to unbridled prosecutorial overreach" are meritless.

IV.

A.

We first address defendant's claim that N.J.S.A. 2C:40-18b does not encompass violations of the Seat Belt Law. Defendant's argument rests on the proper interpretation of N.J.S.A. 2C:40-

10

We therefore begin with certain familiar principles of statutory interpretation.

The primary goal of statutory interpretation "is to determine as best we can the intent of the Legislature, and to give effect to that intent." State v. Hudson, 209 N.J. 513, 529 (2012); accord State v. Shelley, 205 N.J. 320, 323 (2011). "[T]he best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010). The intent of the Legislature "begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." Hudson, supra, 209 N.J. at 529. "When the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Shelley, supra, 205 N.J. at 323.

This court must construe and apply a statute as enacted. In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980). We will not "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). For that reason, courts "are not free to superimpose on the ordinary meaning" of statutory language limitations or extensions of the sweep of the enactment. State v. Froland, 193 N.J. 186, 196 (2007). Absent

11

a clear indication from the Legislature that it intended statutory language to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning.  State v. Bunch, 180 N.J. 534, 543 (2004); State v. Afanador, 134 N.J. 162, 171 (1993).

B.

Defendant argues that N.J.S.A. 2C:40-18b does not apply to this case because the Legislature intended to limit the types of predicate offenses contemplated by the statute to offenses such as "violations of fire and building codes, pollution controls, or other laws whose violations risk harm to the community at large."  Defendant argues that a violation of the Seat Belt Law, therefore, does not qualify as a predicate offense for N.J.S.A. 2C:40-18b.  We disagree.

Our review of the meaning of a statute or the common law is de novo.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).  We find nothing in N.J.S.A. 2C:40-18b that would limit the phrase, "law intended to protect the public health and safety," in the manner suggested by defendant.  Without a clear indication from the Legislature that it intended the phrase to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning.  Bunch, supra, 180 N.J. at 543; Afanador, supra, 134 N.J. at 171.  And, as the Attorney General points out, if the Legislature had intended to

12

restrict N.J.S.A. 2C:40-18 to laws that affect the public at large, it would have done so.

Even if we were to accept the distinction urged by defendant, however, the Seat Belt Law does protect the community at large and not merely discrete individuals.  Following an initial impact, several scenarios can occur if a passenger is unrestrained.  The unrestrained passenger could be:  (a) thrown against the driver affecting the defendant's ability to control the vehicle and avoid other vehicles or persons in the vicinity; (b) thrown against other passengers in the vehicle; (c) ejected from the vehicle in the initial collision injuring others nearby; or (d) ejected onto the roadway, causing other accidents as other drivers react with evasive maneuvers.  See Kohrig, supra, 498 N.E.2d at 1164-65; People v. Weber, 494 N.Y.S.2d 960, 963 (Justice Ct. 1985).  In all of those situations, the impact of a driver's or passenger's failure to wear a seat belt goes beyond the individual.

The Seat Belt Law's legislative history reinforces that notion and speaks to the law's broad scope.  In 1984, New Jersey enacted the "Passenger Automobile Seat Belt Usage Law." N.J.S.A. 39:3-76.2e to -76.2k.  The purpose of the law is clearly reflected in the bill's sponsor statement:  "to require that the driver and passenger in the front seat of an operating passenger automobile wear the safety seat belt system provided

13

as original equipment in virtually all passenger automobiles operating on New Jersey streets and highways." Assemb., 2304 (Sponsor's Statement), 201st Leg., 1st Sess. (N.J. June 28, 1984). New Jersey Governor Thomas H. Kean noted at the time of signing the bill into law that traffic statistics "have already proven rather conclusively that safety belts are instrumental in preventing injury and death in motor vehicle accidents." Governor's Statement on Signing Assembly Bill No. 2304 (Nov. 8, 1984).

In a committee statement that accompanied the 1984 law, the Legislature noted the following:

> 1. There has been a "dramatic decrease in fatalities and serious injuries in countries and provinces having enacted Seat Belt Law. . . ."
>
> 2. "It is estimated that easily one-half of all fatalities and serious injuries can be eliminated by simply requiring people to use equipment already installed in their vehicles. . . ."
>
> 3. Mandating such use would "greatly reduce lost work time, insurance cost and health benefit cost to both individuals, private companies, and the State of New Jersey."
>
> 4. Lastly, "[w]hile insurance rates in the State of New Jersey are among the highest in the country, the increased use of safety seat belt systems will cause subsequent reductions in accidents, deaths, injuries, and lost work time. This could lead to reduced cost to business and industry, and local and state governments thereby eventually leading to cost containment and

14

other incentives in automotive insurance rates and premiums."

[Waterson, supra, 111 N.J. at 261 (citing Assembly Law, Public Safety and Defense Committee Statement to Assembly, No. 2304, p.3 (1984)).]

In Waterson, supra, this Court explained that "'seat belts may be the most significant source of automobile crash protection for automobile occupants.'" 111 N.J. at 269-70 (quoting Dunn v. Durso, 219 N.J. Super. 383, 394 n.8 (Law Div. 1986)). The Court also took "judicial notice of the efficacy of seat belts." Id. at 269. Similarly, in a constitutional challenge to a New Jersey statute requiring motorcyclists to wear helmets, the Appellate Division held that such a law "bears a real and substantial relationship to highway safety generally." State v. Krammes, 105 N.J. Super. 345, 346 (App. Div.), certif. denied, 54 N.J. 257 (1969). Like the Appellate Division, we also note that other States have declared that seat belt laws protect the community at large. Lenihan, supra, 427 N.J. Super. at 511 (citing cases).

For those reasons, we find that the language included in N.J.S.A. 2C:40-18 -- making it an offense "to knowingly violate[] a law intended to protect the public health and safety" -- encompasses the Seat Belt Law.

V.

A.

15

Defendant also challenges the constitutionality of N.J.S.A. 2C:40-18b. She contends the law is vague as applied to her. The issue was first raised in defendant's reply brief in the Appellate Division. "To raise [an] issue initially in a reply brief is improper." Twp. of Warren v. Suffness, 225 N.J. Super. 399, 412 (App. Div.) (citing State v. Smith, 55 N.J. 476, 488), certif. denied, 113 N.J. 640 (1988). Nonetheless, for the sake of completeness in disposing of all issues, we address this argument on the merits. As the party challenging the constitutionality of a statute, defendant bears the burden of establishing its unconstitutionality. State v. One 1990 Honda Accord, 154 N.J. 373, 377 (1998); State v. Jones, 346 N.J. Super. 391, 406 (App. Div.), certif. denied, 172 N.J. 181 (2002).

A presumption of validity attaches to every statute. State v. Muhammad, 145 N.J. 23, 41 (1996); In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497 (1989), cert. denied, 493 U.S. 1045, 110 S. Ct. 841, 107 L. Ed. 2d 836 (1990). That presumption is "particularly daunting when a statute attempts to protect the public health, safety, or welfare." In re C.V.S. Pharmacy Wayne, supra, 116 N.J. at 497. In short, public health and safety legislation has been consistently sustained if it "'is not arbitrary, capricious, or unreasonable, and the means selected bear a rational relationship to the legislative

16

objective.'" Ibid. (quoting Brown v. City of Newark, 113 N.J. 565, 572 (1989)); see also Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 487-88, 75 S. Ct. 461, 464, 99 L. Ed. 2d 563, 571-72 (1955) (holding that statute that does not implicate fundamental constitutional right or liberty interest will be upheld if it bears rational relationship to legitimate legislative purpose and is neither arbitrary nor discriminatory). As long as there is a conceivable basis for finding a rational relationship, the law will be upheld. McGowan v. Maryland, 366 U.S. 420, 426, 81 S. Ct. 1101, 1105, 6 L. Ed. 2d 393, 399 (1961).

This Court has held that "any act of the Legislature will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." Muhammad, supra, 145 N.J. at 41. Even where a statute's constitutionality is "fairly debatable, courts will uphold" the law. Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 227 (1985). However, courts "are obligated to construe a challenged statute to avoid constitutional defects if the statute is reasonably susceptible of such construction." Cnty. of Warren v. State, 409 N.J. Super. 495, 506 (App. Div. 2009) (citation and internal quotation marks omitted), certif. denied, 201 N.J. 153 (2010), cert. denied, 130 S. Ct. 3508, 177 L. Ed. 2d 1092 (2010).

A statute "is void if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998) (citation and internal quotation marks omitted), cert. denied, 527 U.S. 1021, 119 S. Ct. 2365, 144 L. Ed. 2d 770 (1999). Vagueness may create a denial of due process due to a failure to provide adequate and fair notice or warning. Karins v. Atlantic City, 152 N.J. 532, 544 (1998).

"A statute may be challenged as being either facially vague or vague 'as-applied.'" State v. Maldonado, 137 N.J. 536, 563 (1994) (quoting State v. Cameron, 100 N.J. 586, 593 (1985)). A law is facially vague if it is vague in all applications. Ibid. A statute that "is challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced." Visiting Homemaker Serv. of Hudson Cnty. v. Bd. of Chosen Freeholders of Cnty. of Hudson, 380 N.J. Super. 596, 612 (App. Div. 2005) (citing Maldonado, supra, 137 N.J. at 563).

"[I]f a statute is vague as applied to [the] conduct [at issue], it will not be enforced even though the law might be validly imposed against others not similarly situated." Cameron, supra, 100 N.J. at 593. "Conversely, if a statute is

18

not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others." Ibid. Courts have recognized that the constitutional standard for vagueness must not be mechanically applied. Cameron, supra, 100 N.J. at 591. Penal laws "are subjected to sharper scrutiny and given more exacting and critical assessment under the vagueness doctrine than civil enactments." Ibid. Nonetheless, "vagueness may be mitigated by a scienter requirement, especially when a court examines a challenge claiming that the law failed to provide adequate notice of the proscribed conduct." State v. Saunders, 302 N.J. Super. 509, 517 (App. Div.), certif. denied, 151 N.J. 470 (1997).

### B.

We reject the argument that N.J.S.A. 2C:40-18b is unconstitutionally vague.

Defendant concedes that N.J.S.A. 2C:40-18 is not facially unconstitutional. She notes that violations of fire codes, building codes, and pollution controls may serve as predicate offenses under the statute. Rather, defendant argues that she was not given prior notice that a violation of the Seat Belt Law would subject her to prosecution under N.J.S.A. 2C:40-18.

Here, defendant, in the factual statement supporting her plea allocution, admitted that her passenger, K.G., was not wearing a seat belt, in violation of the Seat Belt Law. Thus,

19

defendant knowingly violated that statute.  As the Attorney General noted, one would be "hard-pressed to locate a more publicized law."  As previously explained, the Seat Belt Law is clearly a "law intended to protect the public health and safety" within the meaning of N.J.S.A. 2C:40-18.  A person "of common intelligence" should understand that a knowing violation of the Seat Belt Law would fall within the statute's scope.  See Hamilton Amusement Ctr., supra, 156 N.J. at 279-80.  Thus, defendant had reasonable notice that a knowing violation of the Seat Belt Law, causing serious bodily injuries, could subject her to prosecution under N.J.S.A. 2C:40-18b.  See Karins, supra, 152 N.J. at 544.

The trial court found that defendant's actions were reckless under the circumstances, and defendant acknowledged that her actions caused the victim to sustain serious bodily injuries.  Although penal laws "are subject[] to sharper scrutiny" and a more "critical assessment under the vagueness doctrine than civil enactments," Cameron, supra, 100 N.J. at 592, the scienter requirement in N.J.S.A. 2C:40-18 -- knowingly -- militates against a vagueness challenge.  See Saunders, supra, 302 N.J. Super. at 517.  The statute also requires that the defendant "recklessly cause[] serious bodily injury," which further restricts the scope of the law.

20

As noted above, a statute that attempts to protect the public health, safety, or welfare, is entitled to a significant presumption of validity.  In re C.V.S. Pharmacy Wayne, supra, 116 N.J. at 497.  Defendant has not overcome that presumption or satisfied her burden of establishing that N.J.S.A. 2C:40-18 is unconstitutionally vague as applied.  See One 1990 Honda Accord, supra, 154 N.J. at 377; Muhammad, supra, 145 N.J. at 41; In re C.V.S. Pharmacy Wayne, supra, 116 N.J. at 497.

Moreover, because "[a] party may test a law for vagueness as applied only with respect to his or her particular conduct," defendant's multiple hypotheticals about the law's potential vagueness are irrelevant.  See Cameron, supra, 100 N.J. at 593; Tobacconist v. Kimmelman, 94 N.J. 85 (1983) ("[W]e know of no doctrine that requires a court to consider and determine the validity of every hypothetical application of legislation when a pre-enforcement vagueness attack is involved.").  Our holding is based on the facts of this case.

VI.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA, ALBIN, and PATTERSON, and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.

21

SUPREME COURT OF NEW JERSEY

NO.    A-45                              SEPTEMBER TERM 2012

ON CERTIFICATION TO        Appellate Division, Superior Court



STATE OF NEW JERSEY,

        Plaintiff-Respondent,

              v.

KIRBY LENIHAN,

        Defendant-Appellant.



DECIDED          September 18, 2014
                 Chief Justice Rabner              PRESIDING
OPINION BY            Judge Rodríguez
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY


| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1