**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2439-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARTIN TACCETTA,
a/k/a MARTIN R. TACCETTA,

    Defendant-Appellant.

_____

Argued March 2, 2022 – Decided June 29, 2022

Before Judges Gilson, Gooden Brown and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 91-04-0063.

Lawrence S. Lustberg argued the cause for appellant (Gibbons PC, attorneys; Lawrence S. Lustberg and Anne M. Collart, on the briefs).

Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Steven A. Yomtov, of counsel and on the brief).

PER CURIAM

In 1993, a jury convicted defendant Martin Taccetta of racketeering, N.J.S.A. 2C:41-2(c) and N.J.S.A. 2C:2-6; conspiracy to commit racketeering, N.J.S.A. 2C:41-2(b) to (d); and two counts of theft by extortion, N.J.S.A. 2C:20-5 and 2C:2-6. His racketeering conviction was deemed a first-degree crime because it was based on predicate acts of extortion that had involved threats of violence. N.J.S.A. 2C:41-3(a).

In 1997, we affirmed defendant's convictions and sentence on his direct appeal. State v. Taccetta (Taccetta I), 301 N.J. Super. 227 (App. Div. 1997). Twelve years later, the New Jersey Supreme Court rejected defendant's first petition for post-conviction relief (PCR). State v. Taccetta (Taccetta IV), 200 N.J. 183 (2009).

On this appeal, defendant appeals from the denial of his third PCR petition and a motion to correct an alleged illegal sentence. Defendant challenges only his sentence on the racketeering conviction, arguing that he was illegally sentenced to a first-degree crime when he should have been sentenced to a second-degree crime. In that regard, defendant contends that under more recent precedent from the United States Supreme Court, N.J.S.A. 2C:41-3(a), which provides that racketeering is a first-degree crime if it involves a "crime of violence," is unconstitutionally vague. We reject that argument because

2

defendant's sentence was based on the specific facts that he extorted monies based on threats of violence. Accordingly, we affirm the order denying defendant's third PCR petition and his motion to correct an alleged illegal sentence.

## I.

The charges against defendant arose out of his membership in the Lucchese crime family and his involvement with the La Cosa Nostra, an organization of several crime families. See generally State v. Cagno, 211 N.J. 488, 494-95 (2012) (describing the structure of La Cosa Nostra). Defendant and several co-defendants were indicted for offenses related to murder, extortion, and promoting illegal gambling. Defendant was indicted for five crimes: second-degree conspiracy to commit racketeering; first-degree racketeering; first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), N.J.S.A. 2C:2-6; and two counts of second-degree theft by extortion. The extortion charges against defendant alleged that he and his co-defendants had committed thefts by extortion "through threats to inflict bodily harm upon [] person[s] . . . and through threats to inflict harm which would not substantially benefit [defendants]." On the murder, racketeering, and extortion charges, defendant was charged as an accomplice to his co-defendants. N.J.S.A. 2C:2-6.

In 1984, Vincent Craporatta was murdered. The evidence at trial included testimony that co-defendant Thomas Ricciardi, another member of the Lucchese crime family, had beaten Craporatta to death with a golf club while yelling, "pay your debts." Taccetta I, 301 N.J. Super. at 237.

Shortly after Craporatta was murdered, a dispute arose between the Lucchese family and the Bruno/Scarfo family for control over the rights to extort protection money from Pasquale (Pat) and Vincent Storino. The Storino brothers, together with Sal Mirando, owned SMS, a business that manufactured a video slot machine used for illegal gambling. Defendant took the position that the Storino brothers were controlled by and needed to pay protection money to the Lucchese family. A member of the Bruno/Scarfo family disputed that position and claimed the rights to control and extort money from the Storinos.

In 1984, there were a series of meetings between representatives of the Lucchese and Bruno/Scarfo families to resolve the dispute. Ultimately, it was agreed that defendant and the Lucchese family would control the Storino brothers and their interest in SMS. Thereafter, members of the Lucchese family extorted monies from the Storino brothers.

At trial, Philip Leonetti, a member of the Bruno/Scarfo family, testified on behalf of the State. Leonetti explained the meetings that resulted in the

agreement that defendant and the Lucchese family would control the Storinos. He also testified that Pat Storino feared the Luccheses because Ricciardi had murdered Craporatta, who was his uncle.

After it was agreed that the Luccheses would control the Storinos, Pat Storino was told that he had to pay tribute to the Lucchese family. According to Leonetti, Anthony Accetturo, another member of the Lucchese family and a co-defendant, told Pat Storino that his uncle had been killed because he had not paid for protection, but if Pat paid, he had "nothing to worry about." Id. at 238.

In charging the jury, the trial court explained that the racketeering counts required proof that defendant had engaged in two or more predicate acts of murder, theft by extortion, or promoting gambling. In charging the jury on the extortion counts, the trial court explained that the State needed to prove that defendant had obtained property from Pat and Vincent Storino and that the property had been obtained by extortion. The trial court then instructed the jury:

> A person extorts if he purposely threatens to inflict bodily injury on a person or commit any other criminal offense or, B, inflict any harm which would not substantially benefit the defendant but is calculated to materially harm another person in some important way. . . . The threat may be to injure the victim directly, or it may be to injure another person unrelated to the victim.

A-2439-19

The jury convicted defendant of racketeering, conspiracy to commit racketeering, and two counts of theft by extortion. On the verdict sheet, the jury was required to identify the specific acts or activities that formed the basis of its verdict for conspiracy and racketeering. The jury found that the predicate offenses for defendant's racketeering conviction were theft by extortion of Pat and Vincent Storino. It found that the predicate offenses for defendant's conviction of conspiracy to commit racketeering were theft by extortion and promoting gambling. The jury acquitted defendant of Craporatta's murder and found that the murder was not a predicate act of defendant's racketeering. The jury convicted co-defendant Ricciardi of Craporatta's murder.

At sentencing, which took place in 1993, the trial court determined that defendant's conviction for racketeering was a first-degree crime because the extortion involved threats of violence. The trial court also found defendant eligible for an extended-term sentence both as a persistent offender and a professional criminal. See N.J.S.A. 2C:44-3(a) and (b). The conspiracy conviction was merged with the racketeering conviction. On the racketeering conviction, defendant was sentenced to life imprisonment with twenty-five years of parole ineligibility. On each of the theft-by-extortion convictions, defendant was sentenced to ten years in prison with five years of parole ineligibility. The

6

extortion convictions were run concurrent to each other but consecutive to the racketeering conviction. Accordingly, in the aggregate, defendant was sentenced to life imprisonment plus ten years with thirty years of parole ineligibility.

As already noted, defendant filed a direct appeal, but we affirmed his convictions and sentence. Taccetta I, 301 N.J. Super. at 233. Our Supreme Court denied defendant's petition for certification. 152 N.J. 188 (1997).

On his direct appeal, defendant argued that the trial court had erred in treating the racketeering charge as a first-degree crime, asserting that the extortion convictions, which were the predicate offenses for racketeering, were not "crimes of violence" under N.J.S.A. 2C:41-3(a). Taccetta I, 301 N.J. Super. at 255. In analyzing that argument, we noted that defendant had been charged with extortion specifically involving threats to "inflict bodily injury on or physically confine or restrain any one or commit any other criminal offense" under N.J.S.A. 2C:20-5(a). Id. at 256. We held that a "rational" reading of the statutory language established "an obvious legislative intent to make extortion a crime of violence." Ibid. In that regard, we explained:

> Here, Martin Taccetta's conviction required the State to prove he obtained either directly or indirectly, as an accomplice/co-conspirator, the property of the Storinos by the threat of violence. The threat found its effect on

the Storinos by the murder of their uncle when he failed to pay tribute. The only motive for the Storinos to enrich Martin Taccetta and his crime family was a very rational fear of bodily injury or death which would result from a failure to do so. Under such circumstances, reason and common sense dictate extortion is a crime of violence.

[Id. at 257.]

We, therefore, held that it was "incomprehensible to conclude extortion by threat of violence, particularly of a nature that occurred here, is not a crime of violence under the RICO statute," and we upheld defendant's sentence. Ibid.

In 1998, defendant filed his first PCR petition. Of relevance to this appeal, defendant argued that his trial counsel incorrectly had told him that if he was acquitted of murder, the racketeering charge against him would be treated as a second-degree offense. He argued that advice constituted ineffective assistance because he had rejected a plea offer from the State based on that incorrect advice.

Following an evidentiary hearing, the first PCR court vacated defendant's convictions and ordered a new trial. We affirmed that decision in State v. Taccetta (Taccetta III), Nos. A-2505-05 and A-2581-05 (App. Div. Mar. 6, 2008). Our Supreme Court, however, reversed and reinstated defendant's conviction and sentence. Taccetta IV, 200 N.J. at 186. The Court held that even

8

if defendant had been offered the plea deal, the trial court could not have accepted it because defendant was "legally disabled" from taking a plea offer that would have required him to perjure himself.  Id. at 195.[1]

Defendant also filed a petition for habeas corpus with the federal court.  That petition was denied, and the denial was affirmed on appeal.  Taccetta v. Adm'r N.J. State Prison, 601 Fed. Appx. 165, 168-69 (3d Cir. 2015).  The United States Supreme Court denied defendant's petition for certiorari on October 5, 2015.  Taccetta v. D'Ilio, 577 U.S. 870 (2015).

This appeal arises out of defendant's third PCR petition, which defendant filed in June 2016.  Defendant also filed a motion to correct an illegal sentence.  Defendant argued that his first-degree sentence was an illegal sentence because the term "crime of violence" in N.J.S.A. 2C:41-3(a) is unconstitutionally vague under a trilogy of cases that were handed down by the United States Supreme Court beginning in 2015.  See Johnson v. United States, 576 U.S. 591 (2015); Sessions v. Dimaya, 138 S. Ct. 1204 (2018); United States v. Davis, 139 S. Ct. 2319 (2019).  In challenging his sentence, defendant argued that under Johnson,

---

[1] While the first PCR was pending, defendant filed a second PCR asserting that the State's proofs at trial were based on perjured testimony.  That petition was denied in 2005, and the denial was affirmed on appeal.  Taccetta III, Nos. A-2505-05 and A-2581-05.

A-2439-19

Dimaya, and Davis, N.J.S.A. 2C:41-3(a) is unconstitutionally vague because it sets forth no objective standard for determining which crimes will be considered crimes of violence.

In October 2019, the third PCR court issued an interim opinion holding that defendant's PCR petition was timely and that his motion to vacate the alleged illegal sentence was not subject to a time bar. In an order and opinion issued on January 6, 2020, the PCR court denied defendant's third PCR petition and his motion to correct his sentence.

In a thoughtful and comprehensive written opinion, Judge Guy P. Ryan, J.S.C., held that N.J.S.A. 2C:41-3(a) was not unconstitutionally vague. Judge Ryan distinguished Johnson, Dimaya, and Davis, noting that the federal statutes involved in those cases required a "categorical approach" that resulted in arbitrary enforcement. In contrast, Judge Ryan reasoned that the portion of the New Jersey RICO statute that enhanced a crime from a second- to a first-degree called for a fact-specific analysis. Judge Ryan then reasoned that the sentencing court had relied on the specific facts found by the jury in imposing a first-degree sentence on defendant's racketeering conviction. Defendant now appeals from the January 6, 2020 order denying his third PCR petition and his motion to correct an alleged illegal sentence.

## II.

On this appeal, defendant challenges his sentence on the racketeering conviction, arguing that it is illegal because it was unconstitutionally enhanced from a second-degree crime to a first-decree crime. He contends:

> I. THE PHRASE "CRIME OF VIOLENCE," AS SET FORTH IN N.J.S.A. 2C:41-3(A), IS UNCONSTITUTIONALLY VAGUE, AND ITS USE TO INCREASE [DEFENDANT'S] SENTENCE VIOLATES DUE PROCESS.
>
> > A. New United States Supreme Court Precedent Now Dictates That Certain Statutory Characterizations Based On Violence Are Void For Vagueness.
> >
> > B. The New Jersey Racketeering Sentencing Statute Suffers From The Same Deficiencies Identified In Johnson, Dimaya, and Davis.
> >
> > C. [Defendant's] case itself demonstrates the dearth of objective standards and confusion about "crime of violence."

The issue on this appeal presents a question of law: is N.J.S.A. 2C:41-3(a) unconstitutionally vague? Appellate courts use a de novo standard of review when determining the constitutionality of a statute. State v. Hemenway, 239 N.J. 111, 125 (2019). "A presumption of validity attaches to every statute." State v. Lenihan, 219 N.J. 251, 266 (2014) (citing State v. Muhammad, 145 N.J.

11

23, 41 (1996); In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497 (1989)). Our Supreme Court has explained that "any act of the Legislature will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." Ibid. (quoting Muhammad, 145 N.J. at 41).

The vagueness issue was not decided in any of defendant's prior appeals because his current appeal relies on decisions issued by the United States Supreme Court after the denial of his last appeal. Those cases recognized a constitutional rule that applies retroactively to sentences enhanced under a "categorical approach." See Welch v. United States, 136 S. Ct. 1257, 1265 (2016) (holding that Johnson was a substantive decision that has retroactive effect). Moreover, defendant's motion challenging his sentence as illegal was timely. An illegal sentence can be corrected "at any time." R. 3:21-10(b)(5).

"A statute 'is void if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application."'" Lenihan, 219 N.J. at 267 (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998)). The constitutional flaw with a vague statute is that it may deny due process by failing to provide fair notice of the prohibited conduct. Ibid.; see also U.S. Const. amend. XIV, § 1. Statutes can also be unconstitutionally vague if they authorize or allow arbitrary and selective enforcement. Hill v.

Colorado, 530 U.S. 703, 732 (2000). An offense must be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983).

A statute can be challenged as being either facially vague or vague as applied. Lenihan, 219 N.J. at 267. A law is facially vague if it is vague in all applications. Ibid. Accordingly, a facial due-process challenge is particularly difficult to present and establish. United States v. Salerno, 481 U.S. 739, 745 (1987).

"A statute that 'is challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced.'" Lenihan, 219 N.J. at 267 (quoting Visiting Homemaker Serv. of Hudson Cnty. v. Bd. of Chosen Freeholders, 380 N.J. Super. 596, 612 (App. Div. 2005)). If the statute "is not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others." Ibid. (quoting State v. Cameron, 100 N.J. 586, 593 (1985)). Accordingly, a person challenging a statute must normally show that it is vague as applied to him or her. See Holder v. Humanitarian L. Project, 561 U.S. 1, 18-19 (2010); Vill. of Hoffman Ests. v.

13

Flipside, Hoffman Ests., Inc., 455 U.S. 489, 495 (1982); State v. Dalal, 467 N.J. Super. 261, 281 (App. Div. 2021).

Defendant relies on the United States Supreme Court's decisions in Johnson, Dimaya, and Davis, and contends that the constitutional rule in those cases requires that the enhancement clause of the New Jersey RICO statute be declared void as vague. He primarily contends that the statute is facially vague. He also argues that the statute is vague as applied to him. We reject those arguments.

Johnson considered a challenge to a residual sentencing clause in the Armed Career Criminal Act (the ACCA), 18 U.S.C. § 924(e)(1). 576 U.S. at 593. The ACCA enhanced the sentence for a firearms conviction if the defendant had three or more prior convictions for a "violent felony." 18 U.S.C. § 924(e)(1). The ACCA defined "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that--
>
> (i) has as an element of the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
>
> [18 U.S.C. § 924(e)(2)(B) (emphasis added).]

14

The final part of this definition's subsection (ii) came to be known as the ACCA's residual clause. Johnson, 576 U.S. at 594. The Supreme Court did not invalidate subsection (i) or the enumerated offenses set forth in subsection (ii). Instead, the Court determined that the residual clause was void for vagueness because it left "uncertainty about how to estimate the risk posed by a crime" and "uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 597-98.

In reaching that conclusion, the Supreme Court held that the ACCA required a "categorical approach." Id. at 596 (citing Taylor v. United States, 495 U.S. 575, 600 (1990)). Under the categorical approach, a court determines whether a crime qualifies as a violent offense "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Johnson, 576 U.S. at 596 (quoting Begay v. United States, 553 U.S. 137, 141 (2008)).

In Dimaya, the Court evaluated a provision in the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), which required that "any alien convicted of an 'aggravated felony' after entering the United States" be deported. 138 S. Ct. at 1207. The INA defined "aggravated felony" by listing numerous offenses and references to other criminal statutes, including one

15

statute defining "a crime of violence." Id. at 1211. That statute defined a "crime of violence" to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Ibid. (quoting 18 U.S.C. § 16)

The Court held that the statute's residual clause was unconstitutionally vague. Id. at 1207. Like the ACCA's residual clause, the Court found that the residual clause in Section 16 required courts to apply a categorical approach. Id. at 1217. Accordingly, the provision "call[ed] for a court to identify a crime's 'ordinary case' in order to measure the crime's risk." Id. at 1215. The Court expressly noted that "[i]f Congress had wanted judges to look into a felon's actual conduct, 'it presumably would have said so.'" Id. at 1218 (quoting Descamps v. United States, 570 U.S. 254, 267-68 (2013)).

In Davis, the Court again addressed a vagueness challenge to a sentencing statute that authorized heightened criminal penalties for using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," a federal "crime of violence." 18 U.S.C. § 924(c)(1)(A). "Crime of violence" was defined to include, through its residual clause, a felony "that by its nature, involves a substantial risk that physical force against the person or property of

another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). The <u>Davis</u> court held that the statute at issue required a categorical approach and held the residual clause unconstitutionally vague. 139 S. Ct. at 2324.

Significantly, the Court in <u>Davis</u> stated that "a case-specific approach would avoid the vagueness problems that doomed the statutes in <u>Johnson</u> and <u>Dimaya</u>." <u>Id.</u> at 2327. The Court went on to explain that there is "no vagueness problem with asking a jury to decide whether a defendant's 'real-world conduct' created a substantial risk of physical violence." <u>Ibid.</u>

In summary, <u>Johnson</u>, <u>Dimaya,</u> and <u>Davis</u> interpreted specific federal statutes and found residual clauses in those statutes to be unconstitutionally vague because the statutes required a categorical approach to assess whether a crime was a violent crime. The legal question we must determine is whether the New Jersey RICO sentencing enhancement provision requires a categorical approach or whether it is otherwise unconstitutionally vague.

The version of N.J.S.A. 2C:41-3(a) in effect at the time of defendant's crimes stated that a person who violates any provision to the anti-racketeering statute, N.J.S.A. 2C:41-2, "in connection with a pattern of racketeering activity which involves a crime of violence or the use of firearms," is guilty of a crime

17

of the first degree.  All other violations of the anti-racketeering statute were second-degree crimes.  N.J.S.A. 2C:41-2.  "Crime of violence" was not defined in the racketeering statute.

We hold that N.J.S.A. 2C:41-3(a) is not unconstitutionally vague.  The statute does not contain the same type of residual clause found in the federal statutes invalidated in <u>Johnson</u>, <u>Dimaya,</u> and <u>Davis</u>.  The plain language of the New Jersey RICO statute does not require a categorical approach to determine enhancement.  It does not require a court to consider whether a charge "by its nature" poses a particular level of risk of harm or whether a charged crime is of the type that "by its nature" involves violence.  Instead, N.J.S.A. 2C:41-3(a) states that a person who violates the racketeering statute through a pattern of activity that involves "a crime of violence" has committed a first-degree crime.  We read that language to mean that "a crime of violence" refers to a defendant's actual conduct.  Indeed, even if the language could arguably be construed as ambiguous, we construe the statute to have the meaning that conforms to the Constitution.  <u>See</u> <u>State v. Pomianek</u>, 221 N.J. 66, 90-91 (2015) ("[W]hen a statute is susceptible to two reasonable interpretations, one constitutional and one not . . . [w]e then assume that the Legislature would want us to construe the statute in a way that conforms to the Constitution." (internal citation omitted)).

Moreover, a case-specific approach was applied in defendant's conviction and sentence. Defendant was indicted for extortion under the subsection that required threats to "inflict bodily injury on or physically confine or restrain anyone or commit any other criminal offense." N.J.S.A. 2C:20-5(a). Defendant was also charged under the subsection that required threats to "[i]nflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person." N.J.S.A. 2C:20-5(g). In the verdict sheet, the jury stated that defendant was found guilty under those provisions. Consequently, in sentencing defendant, the sentencing court considered defendant's actual conduct and relied on the jury verdict in imposing a first-degree sentence.

Although defendant argues that the sentencing judge engaged in a categorical approach, the record does not support that argument. The sentencing judge questioned the meaning of "crime of violence," but ultimately relied on the jury's determination as to defendant's own conduct: "It's certainly reasonable to say that a crime of violence is a crime in which violence is contemplated as part of the offense, and clearly, that is so in this type of extortion." Read in context, the reference to "this type of extortion" referred to defendant's conduct and the conduct of his accomplices. Defendant was charged as an accomplice

19

in the extortion counts. Consequently, he could be found guilty of an offense committed by his own conduct or the conduct of another involved in the same conspiracy. See N.J.S.A. 2C:2-6. The jury expressly found that the predicate offenses for defendant's racketeering conviction was theft by extortion of the Storinos. The theft by extortion was premised on the threat of bodily harm made to the Storinos by Accetturo and Ricciardi, who were defendant's accomplices and co-conspirators. Thus, by finding that the theft by extortion of the Storinos was a predicate offense for defendant's racketeering conviction, the jury found that defendant's racketeering crime was a crime of violence under N.J.S.A. 2C:41-3. It was, therefore, appropriate for the sentencing court to consider the threat of bodily harm made to the Storinos by Accetturo and Ricciardi and, based on that jury finding, to hold that defendant's conviction for racketeering was a first-degree crime.

In summary, the statutes at issue in Johnson, Dimaya and Davis are distinguishable. The sentencing enhancement in the New Jersey RICO statute does not contain language like the residual provisions struck down in those cases and does not require a categorical approach. We, therefore, hold that N.J.S.A. 2C:41-3(a) is neither vague facially nor as applied to defendant.

Defendant's sentence also did not run afoul of the prohibition of a judge enhancing a sentence based on a fact not found by the jury. See Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004); State v. Natale, 184 N.J. 458 (2005). The question of whether defendant committed theft by extortion through threats to inflict bodily harm was put to the jury through specific questions on the jury sheet.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2439-19