SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Andrew Higginbotham (A-57-22) (088035)**

**Argued November 29, 2023 -- Decided May 8, 2024**

**WAINER APTER, J., writing for a unanimous Court.**

The Court considers whether subsection (c) of the definition of "portray a child in a sexually suggestive manner" in N.J.S.A. 2C:24-4(b)(1) is substantially overbroad in violation of the First Amendment to the United States Constitution.

Defendant Andrew Higginbotham was charged with sixteen counts of endangering the welfare of a child under subsection (c), which makes it a crime "to otherwise depict a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political, or scientific value." N.J.S.A. 2C:24-4(b)(1). The charges arose from photographs he had distributed of a five-year-old girl. Defendant superimposed sexually explicit, obscene text over the photos. He also distributed a photo of his clothed but aroused penis next to photos of the child, superimposed with sexually explicit, obscene text. In all photos, the child was clothed.

Defendant moved to dismiss the indictment, contending that subsection (c) was unconstitutionally vague and overbroad, either on its face or as applied to him. The trial court denied the motion. The Appellate Division reversed, holding that all three of the definitions of "portray a child in a sexually suggestive manner" set forth in N.J.S.A. 2C:24-4(b)(1) -- i.e., subsection (c), which defendant had challenged, but also subsections (a) and (b), which he had not -- were unconstitutionally overbroad because they criminalized images that constituted neither child pornography nor obscenity. 475 N.J. Super. 205, 233 (App. Div. 2023). The Court granted certification. 254 N.J. 515 (2023).

**HELD:** Subsection (c) of the definition of "portray a child in a sexually suggestive manner" in N.J.S.A. 2C:24-4(b)(1) is unconstitutionally overbroad because it criminalizes a large swath of material that is neither obscenity nor child pornography. Because defendant was not charged under subsections (a) or (b) of the definition of "portray a child in a sexually suggestive manner," and did not challenge subsections (a) or (b) before the trial court or the Appellate Division, the Court does not reach the validity of those subsections.

1

1.  Narrow categories of speech that are historically unprotected by the First Amendment include fighting words, obscenity, child pornography, incitement, defamation, true threats, and speech integral to criminal conduct.  Child erotica is not on the list, but both obscenity and child pornography are relevant to this case.  Under Miller v. California, something is obscene if (1) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest"; (2) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law"; and (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."  413 U.S. 15, 24 (1973).  Whereas states may constitutionally proscribe the distribution of obscene material, possession of obscene material by the individual in the privacy of his own home is constitutionally protected.  (pp. 13-14)

2.  In New York v. Ferber, the Court recognized a separate exception to the First Amendment for child pornography.  458 U.S. 747, 764 (1982).  The Court has upheld statutes that define child pornography as the portrayal of "sexual conduct" or "sexual acts" by children, which includes the lewd or lascivious exhibition of, or graphic focus on, a child's genitals or pubic area.  Id. at 751-53, 762.  Child pornography need not meet the Miller obscenity standard to be proscribed; it is a separate type of speech that is categorically unprotected by the First Amendment.  And unlike obscenity, states may constitutionally proscribe the possession and viewing of child pornography in the privacy of one's home.  But laws that ban images that "do not involve, let alone harm, any children in the production process," violate the First Amendment unless they conform to the Miller obscenity standard.  Ashcroft v. Free Speech Coal., 535 U.S. 234, 240-41 (2002).  (pp. 14-17)

3.  A court may hold a law facially overbroad under the First Amendment "[i]f the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'"  United States v. Hansen, 599 U.S. 762, 770 (2023).  "[A] law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."  Ibid.  (pp. 17-18)

4.  "[A]n item depicting the sexual exploitation or abuse of a child" was formerly defined as an image that "depicts a child engaging in a prohibited sexual act or in the simulation of such an act."  N.J.S.A. 2C:24-4(b)(1) (2017).  In 2017, the Legislature amended N.J.S.A. 2C:24-4 to expand the definition to include an image that "portrays a child in a sexually suggestive manner," which is defined in three ways in subsections (a) through (c).  Subsections (a) and (b) use nearly identical language to criminalize any depiction of "a child's less than completely and opaquely covered intimate parts" or "any form of contact with a child's intimate parts," whereas subsection (c) uses different language to criminalize other depictions of children "for the purpose of sexual stimulation or gratification of any person."  (pp. 19-21)

2

5. The first step in any overbreadth analysis is to construe the challenged statute to determine what it covers. Subsection (c) says nothing about obscenity. Although it incorporates <u>Miller</u>'s third prong by requiring that "the depiction does not have serious literary, artistic, political, or scientific value," it says nothing about <u>Miller</u>'s first or second prongs. Subsection (c) therefore criminalizes a substantial amount of speech that does not legally constitute obscenity. Subsection (c) also strays far beyond the definition of child pornography set forth in <u>Ferber</u>. Where the criminalization depends only on whether "any person who may view the depiction" can use it "for the purpose of sexual stimulation or gratification," and where the only limit is that the depiction lacks "serious literary, artistic, political, or scientific value," large swaths of protected material are conceivably ensnared. Indeed, depictions of something other than sexual contact and less than completely covered intimate parts appear to be the only thing that subsection (c) can actually reach that subsections (a) and (b) do not. On its face, subsection (c) criminalizes only materials that do not constitute child pornography. Because the application of subsection (c) to images that constitute neither obscenity nor child pornography is realistic, not fanciful, and is substantially disproportionate to subsection (c)'s lawful sweep, subsection (c) is substantially overbroad. (pp. 23-27)

6. The Court explains why it rejects the State's suggestion that limiting language from subsections (a) and (b) of the definition of "portray a child in a sexually suggestive manner" could be understood to apply to subsection (c) as well, noting that (a), (b), and (c) are disjunctive, that subsection (c) is not reasonably susceptible to the State's limiting construction, and that the Court cannot re-write a plainly written legislative enactment. The Court also rejects the State's claim that "everything that subsection (c) covers . . . fits within" the Supreme Court's most recent definition of child pornography in <u>United States v. Williams</u>, 553 U.S. 285 (2008). In <u>Williams</u>, the Supreme Court proscribed "obscene material depicting (actual or virtual) children engaged in sexually explicit conduct, and any other material depicting actual children engaged in sexually explicit conduct." <u>Id.</u> at 293. But subsection (c) proscribes far more than that. (pp. 27-34)

7. Because subsection (c) can be excised without impacting subsections (a) or (b), the Court holds that subsection (c) alone of the definition of "portray a child in a sexually suggestive manner" contained in N.J.S.A. 2C:24-4(b)(1) is unconstitutional. Defendant can be constitutionally prosecuted under New Jersey's obscenity law but not under a different law that is unconstitutionally overbroad. (pp. 35-36)

**AFFIRMED AS MODIFIED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in JUSTICE WAINER APTER's opinion.**

SUPREME COURT OF NEW JERSEY
A-57 September Term 2022
088035

State of New Jersey,

Plaintiff-Appellant,

v.

Andrew Higginbotham,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
475 N.J. Super. 205 (App. Div. 2023).

| Argued | Decided |
|--------|---------|
| November 29, 2023 | May 8, 2024 |

Michael L. Zuckerman, Deputy Solicitor General, argued the cause for appellant (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, Mercedes N. Robertson and Liza B. Fleming, Deputy Attorneys General, of counsel and on the briefs).

Alison Gifford, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Alison Gifford, of counsel and on the briefs, and Taylor L. Napolitano, Assistant Deputy Public Defender, on the briefs).

Alycia Beyrouty, Assistant Mercer County Prosecutor, argued the cause for amicus curiae County Prosecutor's Association of New Jersey (Jeffrey Sutherland, Cape

1

May County Prosecutor, President, County Prosecutor's Association, attorney; Alycia Beyrouty, Laura Sunyak, Assistant Mercer County Prosecutor, Emily M. Pirro, Assistant Somerset County Prosecutor, K. Charles Deutsch, Assistant Bergen County Prosecutor, Kylie E. Finley, Assistant Cape May County Prosecutor, and Bryna Batten, Assistant Cape May County Prosecutor, of counsel and on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation and Rutgers Constitutional Rights Clinic Center for Law & Justice, attorneys; Alexander Shalom and Jeanne LoCicero, of counsel and on the brief, and Ronald K. Chen, on the brief).

CJ Griffin argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; CJ Griffin and Claude Caroline Heffron, on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

Defendant Andrew Higginbotham was charged with sixteen counts of endangering the welfare of a child under subsection (c) of the definition of "portray a child in a sexually suggestive manner" in N.J.S.A. 2C:24-4(b)(1). Along with the substantive provisions of N.J.S.A. 2C:24-4(b)(1), subsection (c) makes it a crime "to otherwise depict a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where

the depiction does not have serious literary, artistic, political, or scientific value." N.J.S.A. 2C:24-4(b)(1).

This case requires us to decide whether subsection (c) is substantially overbroad in violation of the First Amendment to the United States Constitution. We hold that subsection (c) is unconstitutionally overbroad because it criminalizes a large swath of material that is neither obscenity nor child pornography. We do not reach whether subsection (c) is also unconstitutionally vague. In addition, because defendant was not charged under subsections (a) or (b) of the definition of "portray a child in a sexually suggestive manner," and did not challenge subsections (a) or (b) before the trial court or the Appellate Division, we do not reach the validity of those subsections. We therefore affirm the Appellate Division's judgment as modified.

I.

A.

In 2021, the Brooklawn Police Department learned that defendant Andrew Higginbotham had a journal with a photo of a young girl on the cover. Written on top of the photo were the words "[c]**k in her little mouth" and "[c]*m on her face." In an interview with police, defendant admitted that the journal was his, and said that he used it as a way "to express himself."

3

Defendant stated that the photo on the journal was of his friend's daughter "Christine,"[1] who was born in 2008. Detectives from the Camden County Prosecutor's Office interviewed Christine; she did not allege sexual abuse. Detectives also interviewed Christine's mother. She stated that she had been friends with defendant years earlier, but the friendship had ended, and they were no longer in touch. However, about a month prior to the start of the investigation, she averred, defendant sent her a Facebook message.

Detectives obtained a warrant to search defendant's Facebook accounts. The search revealed that in February 2021, defendant distributed images of Christine from when she was five years old. The images included: (1) a photo of Christine wearing a black-and-white-striped shirt and pink tutu skirt; (2) a video with several photos of Christine and unknown girls wearing bikinis; and (3) a photo of Christine wearing jeans and a shirt with a smiley face emoji, kissing her sister. On top of each photo, defendant superimposed sexually explicit text that he concedes is obscene. He then sent the images to different Facebook users.

Defendant also sent a Facebook user a collage of several photos, consisting of a photo of his clothed but aroused penis next to photos of

---

[1] The trial court and Appellate Division referred to the child as B.R. The parties use the pseudonym Christine. We adopt the parties' pseudonym here.

4

Christine in the black-and-white-striped shirt and pink tutu, a black shirt with a spider web on it, and a blue shirt with a birthday girl ribbon on it. On top of the photo collage, defendant again superimposed sexually explicit text that he concedes is obscene. Defendant sent a similar photo collage, again superimposed with sexually explicit, obscene text, to other Facebook users as well.

Some of the obscene text that defendant superimposed over the photos graphically described violent sexual acts that he wanted to perform on Christine or wanted Christine to perform on him; others described defendant "wanting to molest" Christine. One photo was superimposed with defendant's 264-word sexual fantasy. In all photos, Christine was clothed.

In a second interview with police, defendant admitted to taking photos of Christine when he was friends with her mother years earlier and downloading additional photos of Christine as a young child from her mother's Facebook page. He admitted to superimposing obscene text over the photos of Christine and sending those new images to Facebook users he met in group chats about sex. Defendant confirmed that he sent the images "as satisfaction and pleasure for himself" and to show others what he had. Although he admitted that he masturbated to the images, defendant denied ever masturbating while physically near Christine.

5

B.

A grand jury charged defendant with seven counts of second-degree endangering the welfare of a child under N.J.S.A. 2C:24-4(b)(4); one count of third-degree endangering the welfare of a child under N.J.S.A. 2C:24-4(b)(5)(b)(iii); seven counts of second-degree endangering the welfare of a child under N.J.S.A. 2C:24-4(b)(5)(a)(i); and one count of second-degree endangering the welfare of a child under N.J.S.A. 2C:24-4(b)(5)(a)(ii).

The indictment alleged that defendant portrayed a child "in a sexually suggestive manner by otherwise depicting a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political or scientific value." That language mirrors subsection (c) of the definition of "portray a child in a sexually suggestive manner" found in N.J.S.A. 2C:24-4(b)(1) (hereinafter, "subsection (c)").[2]

Defendant moved to dismiss the indictment. He contended that subsection (c) was unconstitutionally vague and overbroad in violation of the First Amendment to the United States Constitution, either on its face or as applied to him. According to defendant, the photographs were "innocuous" in

---

[2] Fifteen of the sixteen counts explicitly quoted the language of subsection (c). One count did not, but the State conceded at oral argument that that count also charged defendant only under subsection (c) of the definition.

6

that they were "of a fully clothed child, not suggestively posed," and he then "superimposed" them with his own "personal sexual fantasies" without causing harm to Christine. Defendant also asserted that Christine was not "exploited by the production process since the photos themselves are not pornographic or sexually suggestive." (internal quotation marks omitted).

The trial court denied defendant's motion. The court explained that subsection (c) of the definition of "portray a child in a sexually suggestive manner" was not vague because it clearly and unambiguously prohibited "the sexual exploitation of a child in those circumstances where the exposure of a child's intimate parts is not depicted, but nevertheless the depiction of a child is sexually suggestive." The court also found that a jury could conclude defendant violated the statute because he "defaced photographs and video of a child with sexually explicit words and phrases for sexual stimulation or gratification of himself or others." The trial court did not address defendant's overbreadth challenge.

## C.

Defendant successfully moved for leave to appeal, arguing that the trial court erred in holding that subsection (c) was not unconstitutionally vague or overbroad.

7

In a published opinion, the Appellate Division reversed.  State v. Higginbotham, 475 N.J. Super. 205 (App. Div. 2023).  It held that all three of the definitions of "portray a child in a sexually suggestive manner" set forth in N.J.S.A. 2C:24-4(b)(1) -- i.e., subsection (c), which defendant had challenged, but also subsections (a) and (b), which he had not -- were unconstitutionally overbroad because they criminalized images that constituted neither child pornography nor obscenity.  Id. at 233.

As the Appellate Division explained, the definitions went beyond child pornography because they "include[d] images of children who are not engaged in sex acts or whose genitals are not lewdly displayed."  Ibid.  The definitions were thus "at odds with" New York v. Ferber, 458 U.S. 747 (1982), Osborne v. Ohio, 495 U.S. 103 (1990), and Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), which together defined child pornography as "an image of a child engaged in a sex act or the image of a child with their genitals lewdly displayed."  Higginbotham, 475 N.J. Super. at 233.

The Appellate Division pointed out that the three definitions of "portray a child in a sexually suggestive manner" in N.J.S.A. 2C:24-4(b)(1) do not "require the child's genitals be visible in the image or the child be engaged in any type of sexual activity."  Id. at 234.  According to the Appellate Division, the definitions could thus criminalize:  (1) "[a] picture taken on a public beach,

8

which includes children or teenagers in swimsuits, applying sunscreen on each other or themselves"; (2) "photographs taken for telehealth medical diagnostic purposes -- like a rash or other skin condition"; and (3) "[d]epictions of certain types of sporting events -- such as wrestling, cheerleading, gymnastics, or track and field." Ibid.

The statutory definitions also did not proscribe obscenity because they did not incorporate all three elements of the Miller v. California obscenity standard, which the Appellate Division held was required "to comply with the First Amendment." Id. at 236-37 (citing 413 U.S. 15, 24 (1973)). And even if the statutory definitions had incorporated the three prongs of the Miller standard, by criminalizing mere possession of obscene material, they would infringe "an adult's right to view and possess obscene material in the privacy of their home." Id. at 233, 235-36 (citing Stanley v. Georgia, 394 U.S. 557, 560-61 (1969)).

The Appellate Division rejected the State's argument that the images defendant created constituted "morphed" child pornography, pointing out that Christine's "photographic image was not edited at all"; instead, "[d]efendant simply added text to her picture." Id. at 238. And although defendant's words "paint[ed] a mental picture of a child engaged in a sex act . . . [h]is words

9

alone created [that] mental picture." Ibid.[3] The court acknowledged "the potential for reputational and emotional harm to" Christine, but found that defendant's images were "not a record of past [child] abuse, even fake abuse." Ibid.

D.

We granted the State's petition for certification and its motion for a stay of the Appellate Division's decision. 254 N.J. 515 (2023). We also granted leave to the County Prosecutor's Association of New Jersey (CPANJ), the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the American Civil Liberties Union of New Jersey (ACLU) to appear as amici curiae.

II.

The State maintains that subsection (c) "properly construed, targets only images proscribable under Ferber." In the State's reading, subsection (c)'s use of the word "otherwise" "signals that the provision operates as a residual clause, and therefore must be read to cover 'categories similar in type to those specifically enumerated' in subsections (a) and (b)." (quoting Paroline v. United States, 572 U.S. 434, 447 (2014)). Subsections (a) and (b) cover only

---

[3] The Appellate Division noted that defendant's words were "undoubtedly" obscene under N.J.S.A. 2C:34-2, but the State did not charge defendant with any violation of that statute. Id. at 238 n.6.

images that "concentrate prurient interest on the child" and their "intimate parts" -- thus, according to the State, "the same is true of subsection (c)." Under the State's reading, therefore, subsection (c) only prohibits child pornography that may be constitutionally criminalized. Even if subsection (c) did reach some protected speech, the State argues, "any such overbreadth would be at most minor." Finally, the State avers, because defendant was not charged under subsection (a) or (b) and did not challenge subsections (a) or (b), "the [Appellate Division] should not have sua sponte addressed subsections (a) and (b)," and certainly should not have struck them down.

CPANJ agrees with the State. It also contends that "child erotica" is "harmful to the physiological, emotional, and mental health of" children in the same ways as child pornography, and therefore "should not be granted any constitutional protection."

Defendant argues that "[c]hild erotica is not its own category of speech exempt from [the] First Amendment." Instead, "lawmakers can constitutionally prohibit child erotica in only two ways: by criminalizing child erotica that is obscene under [Miller], or by criminalizing child erotica that is pornographic under [Ferber]." Because subsection (c) reaches a substantial amount of protected speech "that is neither obscene nor child pornography, it is unconstitutionally overbroad." According to defendant, by proscribing any

11

image that "otherwise depict[s] a child for the purpose of sexual stimulation or gratification of any person who may view the depiction," N.J.S.A. 2C:24-4b(1), without requiring that the images be "prurient, offensive, nude, or lewd," the statute could criminalize photos of children at a playground, on a beach, or playing sports; children "posing suggestively in a bathing suit or Halloween costume"; or children "performing suggestively in a dance recital or beauty pageant."

The ACDL states that New Jersey is one of only three states that have attempted to criminalize child erotica. According to the ACDL, subsection (c) is overbroad because it "criminalize[s] a significant universe of speech that is neither 'child pornography' under [Ferber] nor 'obscene' under [Miller]." But construing the statute in the way the State does "would require the Court to substantially re-write the entire statutory scheme," the ACDL maintains, violating this Court's role -- to "interpret and apply the law, not to write it."

The ACLU contends that "if the depiction at issue does not result from the sexual exploitation of children, no matter how abhorrent the content, it does not fall within the child pornography exception to the First Amendment." Because the statute "1) expands the definition of child pornography to include images of children who are not engaged in sex acts or whose genitals are not lewdly displayed; and 2) regulates the private possession of child erotica,

12

which . . . is not defined using the terms of the <u>Miller</u> obscenity standard," it is unconstitutionally overbroad.  Moreover, the ACLU predicts, "the risks of overcriminalization may fall disproportionately on sexual minorities, i.e., the LGBTQ+ community."

### III.

### A.

The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, instructs that "Congress shall make no law . . . abridging the freedom of speech."  <u>U.S. Const.</u> amend. I; <u>Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31</u>, 585 U.S. 878, 891-92 (2018).

Historically, certain "types of speech [were] so utterly lacking in social value that they [fell] outside the protections of the First Amendment altogether."  <u>State v. Hill</u>, 256 N.J. 266, 281 (2024).  Narrow categories of speech that are historically unprotected by the First Amendment "include fighting words, obscenity, child pornography, incitement, defamation, true threats, and speech integral to criminal conduct."  <u>Ibid.</u>  Child erotica is not on the list, but both obscenity and child pornography are relevant to this case.

The United States Supreme Court initially defined obscenity in <u>Roth v. United States</u>, 354 U.S. 476 (1957), and then refined the definition in <u>Miller v.</u>

13

California.  Under Miller, something is obscene if (1) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest"; (2) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law"; and (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."  413 U.S. at 24 (quotations omitted).

Whereas states may constitutionally proscribe the distribution of obscene material, "mere possession [of obscene material] by the individual in the privacy of his own home" is constitutionally protected.  Stanley, 394 U.S. at 568.

In New York v. Ferber, the Court recognized a separate exception to the First Amendment for child pornography.  458 U.S. at 764.  The Court has upheld statutes that define child pornography as the portrayal of "sexual conduct" or "sexual acts" by children, which includes the lewd or lascivious exhibition of, or graphic focus on, a child's "genitals or pubic area."  Id. at 751-53, 762; Osborne, 495 U.S. at 107, 112; United States v. Williams, 553 U.S. 285, 290 (2008) (quoting 18 U.S.C. § 2256(2)(A)).[4]

---

[4]  Federal statutes and statutes from other states define child pornography similarly.  See, e.g., 18 U.S.C. § 2256(2)(A)(v) (defining child pornography as

14

Child pornography need not meet the Miller obscenity standard to be proscribed; it is a separate type of speech that is categorically unprotected by the First Amendment. Free Speech Coal., 535 U.S. at 240. And unlike obscenity, states "may constitutionally proscribe the possession and viewing of child pornography" in the privacy of one's home. Osborne, 495 U.S. at 111.

In Ferber, the Supreme Court discussed why states "are entitled to greater leeway" in proscribing child pornography than they are in regulating obscenity. 458 U.S. at 756. Several of the Court's reasons bear mention here.

First, states have a compelling interest in "safeguarding the physical and psychological well-being" of children, and specifically in preventing their "sexual exploitation and abuse." Id. at 756-57 (quotation omitted). Child pornography is "harmful to the physiological, emotional, and mental health" of the children used in its production, and its creation constitutes child sexual abuse. Id. at 758; see also Free Speech Coal., 535 U.S. at 249, 254 (under

including the "lascivious exhibition of the anus, genitals, or pubic area of any person"); 720 Ill. Comp. Stat. 5/11-20.1(a)(i)(vii) (defining child pornography as including the "lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person"); Mass. Gen. Laws ch. 272, § 29C(vii) (defining child pornography as including "a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child"); Utah Code Ann. § 76-5b-103(10)(e) (defining child pornography as including the "lascivious exhibition of the genitals, pubic region, buttocks, or female breast of any person").

15

Ferber, child pornography images are "themselves the product of child sexual abuse" and "the creation of the speech is itself the crime of child abuse"); Paroline, 572 U.S. at 439-40 (production of child pornography "involves child abuse").

Second, beyond its production, the distribution of child pornography is "intrinsically related to the sexual abuse of children" because it constitutes a "permanent record" of that abuse. Ferber, 458 U.S. at 759. Later cases have explained that the circulation of child pornography can "cause[] the child victims continuing harm by haunting the children in years to come," Osborne, 495 U.S. at 111, and causes a "new injury to the child's reputation and emotional well-being" with each re-publication, Free Speech Coal., 535 U.S. at 249; see also Paroline, 572 U.S. at 440-41 (A young woman who was sexually abused to produce child pornography told the court, after learning that her images were being trafficked on the Internet: "[e]very day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them -- at me -- when I was just a little girl being abused for the camera. . . . It's like I am being abused over and over and over again.").

And third, because it is "irrelevant to the child [who has been abused]" by the pornography's creation whether the final product has "literary, artistic,

16

political or social value," the <u>Miller</u> standard does not vindicate the State's interest in preventing child sexual abuse and therefore need not be satisfied. <u>Ferber</u>, 458 U.S. at 761 (alteration in original) (quotation omitted).

In keeping with the State's compelling interest "in protecting the children exploited by the [child pornography] production process," the Supreme Court subsequently clarified that child pornography can be banned, consistent with the First Amendment, if it is "produced" using "real children." <u>Free Speech Coal.</u>, 535 U.S. at 240, 245-46.  Laws that ban images that "do not involve, let alone harm, any children in the production process," do not satisfy the government's compelling interest in protecting children from sexual abuse recognized in <u>Ferber</u>, and therefore violate the First Amendment unless they conform to the <u>Miller</u> obscenity standard.  <u>Id.</u> at 240-41; <u>see also</u> <u>id.</u> at 251 ("[W]here the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment.").

Here, defendant contends that the statute under which he was charged is unconstitutionally overbroad because it criminalizes speech that is neither obscenity nor child pornography.  The First Amendment's overbreadth doctrine is "unusual" in two ways.  <u>United States v. Hansen</u>, 599 U.S. 762, 769 (2023).  First, although a defendant generally may not "assert the constitutional rights of third parties," <u>ibid.</u>, overbreadth allows a successful

17

constitutional challenge even from a person "to whom a statute may be constitutionally applied," Massachusetts v. Oakes, 491 U.S. 576, 581 (1989).

Second, unlike a typical facial challenge, a First Amendment overbreadth challenge does not require the defendant to "establish that no set of circumstances exists under which the [statute] would be valid." Hansen, 599 U.S. at 769 (alteration in original) (emphasis omitted) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). Instead, a court may hold a law facially overbroad under the First Amendment "[i]f the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" Hansen, 599 U.S. at 770 (quoting Williams, 553 U.S. at 292).

Because the overbreadth doctrine is "strong medicine," it is to be used "only as a last resort." Ferber, 458 U.S. at 769 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)). In this regard, "a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." Hansen, 599 U.S. at 770. "In the absence of a lopsided ratio" of unconstitutional applications to constitutional ones, "courts must handle unconstitutional applications as they usually do -- case-by-case." Ibid.

18

B.

Defendant was charged with four types of crimes under New Jersey's child endangerment statute: creation, distribution, possession with intent to distribute, and simple possession of items depicting the sexual exploitation or abuse of a child. N.J.S.A. 2C:24-4(b)(4) criminalizes the use of "any device, including a computer, to reproduce or reconstruct the image of a child in a prohibited sexual act or . . . for portrayal in a sexually suggestive manner." Under N.J.S.A. 2C:24-4(b)(5)(a)(i) and (ii), "[a] person commits a crime if, by any means . . . he: (i) knowingly distributes an item depicting the sexual exploitation or abuse of a child; [or] (ii) knowingly possesses an item depicting the sexual exploitation or abuse of a child with the intent to distribute that item." N.J.S.A. 2C:24-4(b)(5)(b)(iii) criminalizes the knowing possession of "less than 1,000 items depicting the sexual exploitation or abuse of a child."

Prior to February 2018, "an item depicting the sexual exploitation or abuse of a child" was defined only as an image that "depicts a child engaging in a prohibited sexual act or in the simulation of such an act." N.J.S.A. 2C:24-4(b)(1) (2017). In 2017, the Legislature amended N.J.S.A. 2C:24-4 to expand the definition. S. L. & Pub. Safety Comm. Statement to S. 3219 1 (June 15, 2017). Mindful of "changes in the child pornography industry which are not

19

adequately addressed by current law" and the lack of statutory coverage for "images that depict nearly naked, suggestively-posed, and inappropriately sexualized children," the Legislature expanded the definition of "item depicting the sexual exploitation or abuse of a child" to include an image that "portrays a child in a sexually suggestive manner." Ibid. This is what the parties refer to as the Child Erotica Amendments.

The amended definition of "item depicting the sexual exploitation or abuse of a child" is now: "a photograph, film, video," computer image, or "any other reproduction or reconstruction which: (a) depicts a child engaging in a prohibited sexual act[5] or in the simulation of such an act; or (b) portrays a child in a sexually suggestive manner." N.J.S.A. 2C:24-4(b)(1) (emphasis added).

The statute then defines "portray a child in a sexually suggestive manner" as:

> (a) to depict a child's less than completely and opaquely covered intimate parts, as defined in N.J.S.A. 2C:14-1,[6] in a manner that, by means of the posing, composition, format, or animated sensual details, emits sensuality

---

[5] "Prohibited sexual act" includes, among other things, "[n]udity, if depicted for the purpose of sexual stimulation or gratification of any person who may view such depiction," and "[a]ny act of sexual penetration or sexual contact as defined in N.J.S.A. 2C:14-1." N.J.S.A. 2C:24-4(b)(1).

[6] Under N.J.S.A. 2C:14-1(e), "intimate parts" means "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person."

20

with sufficient impact to concentrate prurient interest on the child; or

(b) to depict any form of contact with a child's intimate parts, as defined in N.J.S.A. 2C:14-1, in a manner that, by means of the posing, composition, format, or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the child; or

(c) <u>to otherwise depict a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political, or scientific value.</u>

[N.J.S.A. 2C:24-4(b)(1) (emphasis added).]

As is clear from the text, subsections (a) and (b) of the definition use nearly identical language to criminalize any depiction of "a child's less than completely and opaquely covered intimate parts" or "any form of contact with a child's intimate parts," whereas subsection (c) uses different language to criminalize other depictions of children "for the purpose of sexual stimulation or gratification of any person."

C.

We review the constitutionality of this and all New Jersey statutes de novo, owing no deference to the legal conclusions of the Appellate Division or trial court. State v. Hemenway, 239 N.J. 111, 125 (2019).

Democratically enacted laws "are presumed constitutional." Whirlpool Props. Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 175 (2011). We apply "every

21

possible presumption" in favor of the validity of a challenged statute, recognizing that it "represents the considered action of a body composed of popularly elected representatives." State v. Trump Hotels & Casino Resorts, Inc., 160 N.J. 505, 526 (1999) (quotations omitted). We will thus not strike a statute as unconstitutional "unless its repugnancy to the Constitution is clear beyond a reasonable doubt." State v. Smith, 251 N.J. 244, 263 (2022) (quoting State v. Lenihan, 219 N.J. 251, 266 (2014)).

We also "construe a challenged statute to avoid constitutional defects if the statute is reasonably susceptible" to such a construction. Lenihan, 219 N.J. at 266 (quotation omitted). However, statutory construction begins with an examination of the plain language of the statute, "ascrib[ing] to the . . . words their ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005). We "may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002).

If we find a portion of a statute unconstitutional, the Legislature has mandated a presumption of severability. See N.J.S.A. 1:1-10. We will therefore sever any unconstitutional provision so long as "the invalid portion is independent," and the remainder of the statute, without the invalid provision,

can "form[] a complete act within itself." Inganamort v. Borough of Fort Lee, 72 N.J. 412, 423 (1977).

## IV.

With this background in mind, we hold that subsection (c) is unconstitutionally overbroad. We do not reach whether subsection (c) is vague, and we do not reach the validity of subsections (a) or (b). We therefore affirm the Appellate Division's decision as modified.

## A.

We agree with defendant and the Appellate Division that subsection (c) is unconstitutionally overbroad because it criminalizes a substantial amount of material that is neither obscene nor child pornography, and therefore "does not fall outside the protection of the First Amendment." Free Speech Coal., 535 U.S. at 251.

The first step in any overbreadth analysis is to "construe the challenged statute" to determine what it covers. Williams, 553 U.S. at 293. Recall that in conjunction with the substantive provisions of N.J.S.A. 2C:24-4(b)(1), subsection (c) of the definition of "portray a child in a sexually suggestive manner" makes it a crime "to otherwise depict a child for the purpose of sexual stimulation or gratification of any person who may view the depiction where the depiction does not have serious literary, artistic, political, or scientific

23

value." As earlier noted, while subsections (a) and (b) use nearly identical language to criminalize any depiction of "a child's less than completely and opaquely covered intimate parts" or "any form of contact with a child's intimate parts," subsection (c) uses different language to criminalize other depictions of children "for the purpose of sexual stimulation or gratification of any person."

The State does not contend that subsection (c) is limited to material that meets the Supreme Court's definition of obscenity. For good reason. The statute says nothing about obscenity, and it does not incorporate the three prongs of the Miller obscenity standard into its definition of what material is proscribed. Subsection (c) incorporates Miller's third prong by requiring that "the depiction does not have serious literary, artistic, political, or scientific value." But whereas subsections (a) and (b) require that the depiction "emits sensuality with sufficient impact to concentrate prurient interest on the child," subsection (c) says nothing about Miller's first prong -- that "the average person, applying contemporary community standards would find that the work . . . appeals to the prurient interest." Miller, 413 U.S. at 24. Subsection (c) also does not mention Miller's second prong -- that the work depict "sexual conduct specifically defined by the applicable state law" in a way that is

24

"patently offensive." Ibid. Subsection (c) therefore criminalizes a substantial amount of speech that does not legally constitute obscenity.

Nor is subsection (c) limited to material that legally constitutes child pornography. As earlier noted, the Supreme Court has upheld statutes that define child pornography as the portrayal of "sexual conduct" or "sexual acts" by children, Ferber, 458 U.S. at 764, including the lewd or lascivious exhibition of, or graphic focus on, a child's "genitals or pubic area," id. at 751-53, 762; Osborne, 495 U.S. at 107, 112; Williams, 553 U.S. at 290. Federal statutes and statutes from other states have also included within the definition the lascivious or lewd exhibition of uncovered or transparently clothed buttocks or breasts. See supra, n.4.

Subsection (c) strays far beyond this "suitably limited and described" definition of child pornography. Ferber, 458 U.S. at 764. While subsection (a) makes it a crime "to depict a child's less than completely and opaquely covered intimate parts" and subsection (b) makes it a crime to "depict any form of contact with a child's intimate parts," and both require that the depiction "emit[] sensuality with sufficient impact to concentrate prurient interest on the child," subsection (c) does not require that the depiction be of "a child's less than completely and opaquely covered intimate parts," or "any . . . contact with a child's intimate parts." And it does not require that the

25

depiction "emit[] sensuality with sufficient impact to concentrate prurient interest on the child."[7]  Given subsection (c)'s lack of reference to "less than completely covered intimate parts," "contact with intimate parts," "sensuality," or "prurient interest," defendant and the Appellate Division are correct to fear that, on its face, subsection (c) could criminalize photos of children on the beach, at sporting events, or performing in a dance recital or beauty pageant. Where the criminalization depends only on whether "any person who may view the depiction" can use it "for the purpose of sexual stimulation or gratification," and where the only limit is that the depiction lacks "serious literary, artistic, political, or scientific value," large swaths of protected material are conceivably ensnared.

This is not a "fanciful" hypothetical -- depictions of something other than sexual contact and less than completely covered intimate parts appear to be the only thing that subsection (c) can actually reach that subsections (a) and (b) do not.  On its face, subsection (c) criminalizes only materials that do not constitute child pornography -- materials that do not depict "sexual conduct" or "sexual acts" by children -- and that do not lasciviously or lewdly depict a child's genitals, pubic area, buttocks, or breast.  The State has not come

---

[7]  As earlier noted, our holding concerns only the validity of subsection (c), and says nothing about the validity of subsections (a) or (b).

forward with, and we have not otherwise found, any prosecution brought only under subsection (c) based on material that meets the Supreme Court's definition of child pornography. Likewise, the State has not suggested any image that could be criminalized by subsection (c), but not by subsections (a) or (b), that would meet that definition.

We are mindful that facial overbreadth requires the challenger to demonstrate that the statute "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." Hansen, 599 U.S. at 770. Because the application of subsection (c) to images that constitute neither obscenity nor child pornography is realistic, not fanciful, and is substantially disproportionate to subsection (c)'s lawful sweep, we hold that subsection (c) is substantially overbroad.

## B.

The State disagrees, now contending that subsection (c) is not substantially overbroad because "properly construed," it targets only child pornography. According to the State's current position, "[b]ecause subsection (c) is the final prong of [a] three-part list, introduced with the word 'otherwise,' it is a 'catch-all' clause that covers images that, objectively, concentrate the prurient interest on a child in a similar manner and to a similar degree as subsections (a) and (b)." Citing Paroline, 572 U.S. at 447, and State

27

v. Hoffman, 149 N.J. 564, 579 (1997), the State relies on what it calls the "familiar canon of statutory construction that catchall clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." In the State's telling, because subsections (a) and (b) only prohibit images that "emit[] sensuality with sufficient impact to concentrate prurient interest on the child" and "their 'intimate parts,'" the same is also true for (c).

The State made no such argument before the trial court or the Appellate Division. Neither did the Attorney General, when it participated as amicus curiae in support of the State before the Appellate Division. In any event, the State's current interpretation runs directly counter to the statutory text.

As an initial matter, the word "otherwise" generally does not mean "in a similar manner and to a similar degree." It means the opposite. As an adverb, the word "otherwise" means "in a different way or manner," "in different circumstances," or "in other respects." Webster's Third New International Dictionary 1598 (3d ed. 2002); see also Black's Law Dictionary 1328 (11th ed. 2019) (defining "otherwise" as "[i]n a different way; in another manner" or "[t]o the contrary; differently").

Moreover, subsections (a) and (b) both explicitly require that the image "emit[] sensuality with sufficient impact to concentrate prurient interest on the

28

child."  Subsection (c) does not.  Likewise, subsections (a) and (b) both explicitly require that the depiction be of a child's "intimate parts."  Not so for subsection (c).

We agree with the ACDL that "[i]f the Legislature intended" the "emits sensuality with sufficient impact to concentrate prurient interest on the child" language from subsection (a) "to carry over to each of the subsequent Subsections, there would have been no need for [the Legislature] to repeat that phrase in Subsection (b)."  Instead, "[t]he fact that the Legislature repeated the language in Subsection (b), but not Subsection (c), demonstrates that the Legislature did not seek to impose such a limit in Subsection (c)."  The same is true for the requirement that the depiction be of a child's "intimate parts."

"[I]t is elementary that when the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional."  Ryan v. Renny, 203 N.J. 37, 58 (2010).  Because the Legislature intentionally crafted subsection (c) to be different from subsections (a) and (b), and to catch depictions that are not encompassed within (a) and (b), we cannot heed the State's request that we interpret subsection (c) only to reach "circumstances of the same or like depictions as those enumerated in subsections (a) and (b)."

29

Neither <u>Hoffman</u> nor <u>Paroline</u> counsel otherwise. In <u>Hoffman</u>, we interpreted N.J.S.A. 2C:33-4(a), which deems it harassment to "make[], or cause[] to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm," to "encompass only those types of communications that are . . . invasive of the recipient's privacy." 149 N.J. at 576, 583 (emphasis omitted). We held that the phrase "or any other manner likely to cause annoyance or alarm" was a "catchall provision," relying on the principal of statutory construction that "'when general words follow specific words in a statutory enumeration, the general words are construed to embrace only the objects similar in nature to those objects enumerated by the preceding specific words.'" <u>Id.</u> at 583-84 (quoting <u>Hovbilt, Inc. v. Township of Howell</u>, 263 N.J. Super. 567, 571 (App. Div. 1993)).

Similarly, in <u>Paroline</u>, the United States Supreme Court interpreted 18 U.S.C. § 2259. 572 U.S. at 439. At the time, the statute contained the introductory clause "[f]or purposes of this subsection the term 'full amount of the victim's losses' includes any costs incurred by the victim for," and then listed costs for: "(A) medical services . . . ; (B) physical and occupational therapy . . . ; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees . . . ; <u>and</u> (F) <u>any other losses</u>

30

suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259 (2014) (emphasis added). The court held that (F) was "most naturally understood as a summary of the type of losses covered -- i.e., losses suffered as a proximate result of the offense." Paroline, 572 U.S. at 447 (emphasis added).

Here, we are not dealing with one statutory subsection that includes specific examples of types of communications or types of costs followed by a general summary or catch-all phrase. Instead, as the State correctly argues in its brief, the Legislature defined the phrase "portray a child in a sexually suggestive manner" "through three disjunctive statutory subsections, which provide separate and distinct categories of proscribed material." Each of the three disjunctive subsections, the State acknowledges, is separated by the word "or" and provides a "distinct scenario under which an item depicts the sexualization of a child."

Because of the textual differences between subsections (a), (b), and (c) discussed above, the relevant part of Hoffman is not the one cited by the State, but a discussion several pages earlier in that opinion. In addition to deeming certain communications harassment, the statute at issue in that case, in two additional subsections, deemed certain types of offensive touching and courses of alarming conduct to be harassment. N.J.S.A. 2C:33-4(a), (b), and (c).

31

While the communications only had to "cause annoyance or alarm" to qualify as harassment, N.J.S.A. 2C:33-4(a) (emphasis added), the course of alarming conduct had to be "with purpose to alarm or seriously annoy such other person," N.J.S.A. 2C:33-4(c) (emphasis added).

We refused to "engraft[] the term 'serious' found in subsection (c) into subsection (a) because the Legislature carefully employed it in subsection (c) and excluded it in subsection (a), thereby indicating that the exclusion was intentional." Hoffman, 149 N.J. at 579 (citing N.J.S.A. 2C:33-4(a) and (c)). The same is true here. "[F]amiliar principle[s] of statutory construction preclude[]" us from importing the language of subsections (a) and (b) into subsection (c) where the Legislature made the conscious choice not to do so. Ibid.

Although we "construe a challenged statute to avoid constitutional defects if the statute is reasonably susceptible" to such a construction, Lenihan, 219 N.J. at 266 (quotation omitted), subsection (c) is not reasonably susceptible to the State's limiting construction. Mindful that "it is not our function to 're-write a plainly written enactment,'" J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 214 (2019) (quoting U.S. Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012)), we reject the State's interpretation.

32

We also reject the State's claim that "everything that subsection (c) covers . . . fits within" the Supreme Court's most recent definition of child pornography in <u>Williams</u>, which the State contends clarifies that child pornography "clearly does not require actual participation by [a] child." At issue in <u>Williams</u> was a federal statute that criminalized "offers to provide and requests to obtain child pornography," defined as "obscene visual depiction[s] of a minor engaging in sexually explicit conduct" and "visual depiction[s] of an actual minor engaging in sexually explicit conduct." 553 U.S. at 289-90, 293 (quoting 18 U.S.C. § 2252A(a)(3)(B)). Sexually explicit conduct was defined as "actual or simulated . . . (i) sexual intercourse. . . (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." <u>Id.</u> at 290 (quoting 18 U.S.C. § 2256(2)(A)).

The Supreme Court concluded that the statute's definition of prohibited material "precisely tracks the material held constitutionally proscribable in <u>Ferber</u> and <u>Miller</u>," id. at 293, but not in the way the State suggests. Instead, the Supreme Court held that the statute proscribed "obscene material depicting (actual or virtual) children engaged in sexually explicit conduct, and any other material depicting actual children engaged in sexually explicit conduct." <u>Ibid.</u>

33

Subsection (c) proscribes far more than obscene material depicting virtual children engaged in what the federal statute defines as sexually explicit conduct, or any material depicting actual children engaged in such conduct. Williams therefore does not help the State.

C.

Because we hold that subsection (c) is substantially overbroad, we do not reach the question of vagueness.

We also do not reach the validity of subsections (a) or (b). Defendant was not charged under subsections (a) or (b). He did not challenge subsections (a) or (b) before the trial court or the Appellate Division. And subsection (c) is plainly severable from subsections (a) and (b).

We agree with the State that subsections (a), (b), and (c) are disjunctive subsections that each set forth separate and distinct definitions for materials that "portray a child in a sexually suggestive manner." N.J.S.A. 2C:24-4(b)(1). Subsections (a) and (b) are independent of subsection (c), do not depend on subsection (c) for their meaning, and can stand on their own without subsection (c). There is no indication that the Legislature "designed" that subsections (a), (b), and (c) should "stand or fall as a unitary whole." Brady v. N.J. Redistricting Comm'n, 131 N.J. 594, 606-07 (1992) (quoting State v. Lanza, 27 N.J. 516, 527-28 (1958)).

34

Because subsection (c) can be excised without impacting subsections (a) or (b), we hold that subsection (c) -- and subsection (c) alone -- of the definition of "portray a child in a sexually suggestive manner" contained in N.J.S.A. 2C:24-4(b)(1) is unconstitutional. See Township of Mahwah v. Bergen Cnty. Bd. of Tax'n, 98 N.J. 268, 294 (1985); In re Adoption of N.J.A.C. 5:96, 215 N.J. 578, 617 (2013).

We add a few additional comments. We agree with the State that it has a "compelling interest in protecting children not only from sexual and physical abuse, but also from severe emotional, psychological, and reputational harm." We also agree that "an image that associates a child with explicit sexual content . . . can haunt the child for years." This decision does not opine on the State's ability to protect children from such harms. It simply holds that in criminalizing a wide swath of material that is neither obscenity nor child pornography, subsection (c) is substantially overbroad.[8]

---

[8] In one of its briefs, the State contends that "any applications that are not covered by the child pornography exception" to the First Amendment are covered by other First Amendment exceptions, including "obscenity, defamation, [intentional infliction of emotional distress,] public disclosure of private facts, and/or speech integral to criminal conduct." We explained in detail above why subsection (c) does not criminalize only obscenity. The State provides no argument as to how subsection (c) could criminalize defamation, intentional infliction of emotional distress, public disclosure of private facts, or speech integral to criminal conduct. We therefore do not address those exceptions.

35

Similarly, we agree with the State that defendant "enjoys no First Amendment right" to combine pictures of Christine with obscene language and distribute them over the Internet. Defendant agrees with this point as well. He expressly concedes that he "could be prosecuted under New Jersey's obscenity statute." While defendant can be constitutionally prosecuted under New Jersey's obscenity law, he cannot be prosecuted under a different law that is unconstitutionally overbroad.

V.

The judgment of the Appellate Division is affirmed as modified, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in JUSTICE WAINER APTER's opinion.